UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| PHILLIP ALBERTERNST, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:10-CV-642-JAR |
| ) | |
| CHRISTOPHER E. HUNT, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff's Motion for Summary Judgment on Count I and Count VI of Plaintiff's Complaint Against Defendant Christopher E. Hunt and Defendant William S. Rowe (ECF No. 59), Plaintiff's Motion to Strike Defendants Christopher E. Hunt, William S. Rowe and St. Charles County, Missouri's Expert, Steve Ijames and for Sanctions (ECF No. 111), Plaintiff's Motion to Exclude Defendants' Expert, Steve Ijames, From Offering Testimony at Trial (ECF No. 112), Lake Saint Louis' Motion for Summary Judgment ( ECF No. 114), and Defendants Drug Task Force Officer Deputy Chris Hunt, Drug Task Force Officer Deputy William Rowe and St. Charles County's Motion for Summary Judgment on Counts I, II and VI of Plaintiff's Complaint (ECF No. 119). These matters have been fully briefed and are ready for disposition.[1]

**I. Background**

Plaintiff has filed this action under 42 U.S.C. § 1983, asserting claims of excessive force, assault and battery and municipal liability against four members of the St. Charles County

---

[1] Plaintiff did not file a response to Lake Saint Louis' Motion for Summary Judgment.

Regional Drug Task Force, Christopher E. Hunt ("Hunt"), William S. Rowe ("Rowe"), Dion E. Wilson ("Wilson"), and Deric C. Dull,  and their respective employing jurisdictions, St. Charles County, Missouri ("the County"), the City of Lake Saint Louis, Missouri ("the City"), and the City of O'Fallon, Missouri.[2]  The circumstances underlying Plaintiff's action involve a February 2009 operation of the Warren County Sheriff's Department to arrest Plaintiff on a felony arrest warrant issued in their County for endangering the welfare of a child in the 1st degree, as well as on an outstanding Lincoln County warrant for manufacturing methamphetamine.  The Warren County Sheriff's Department was assisted in the operation by the East Central Drug Task Force (including members of Troop F of the Missouri State Highway Patrol, the Audrain County Sheriff's Department and the Montgomery County Sheriff's Department) and the St. Charles County Regional Drug Task Force. Hunt and Rowe are employed by the County Sheriff's Department as deputies.  Wilson is employed by the City as a police officer.  At times relevant to the Complaint, Hunt, Rowe and Wilson were assigned to the Regional Drug Task Force.

## II. Legal Standard

Summary judgment is appropriate when no genuine issue of material fact exists in the case and the movant is entitled to judgment as a matter of law.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The initial burden is placed on the moving party. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988).  If the record demonstrates that no genuine issue of fact is in dispute, the burden then shifts to the non-moving party, who must set forth affirmative evidence and specific facts showing a genuine dispute on that issue.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  In determining whether

---

[2] Plaintiff dismissed his claims and causes of action against the City of O'Fallon and its officer, Deric Dull with prejudice on March 21, 2011.

summary judgment is appropriate in a particular case, the evidence must be viewed in the light most favorable to the nonmoving party. Osborn v. E.F. Hutton & Co., Inc., 853 F.2d 616, 619 (8th Cir. 1988).

Where parties file cross-motions for summary judgment, each summary judgment motion must be evaluated independently to determine whether a genuine issue of material fact exists and whether the movant is entitled to judgment as a matter of law. Husinga v. Federal-Mogul Ignition Co., 519 F.Supp.2d 929, 942 (S.D. Iowa 2007). "[T]he filing of cross motions for summary judgment does not necessarily indicate that there is no dispute as to a material fact, or have the effect of submitting the cause to a plenary determination on the merits." Wermager v. Cormorant Township Bd., 716 F.2d 1211, 1214 (8th Cir. 1983). In determining the appropriateness of summary judgment, "the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Bingaman v. Kansas City Power & Light Co., 1 F.3d 976, 980 (10th Cir.1993) (citing Anderson, 477 U.S. at 251-52).

**III. Discussion**

**A. Plaintiff's Motion for Summary Judgment on Counts I and VI against Hunt and Rowe**

    **Count I - Excessive Force**

Claims that law enforcement officers have used excessive force in the course of an arrest should be analyzed under the Fourth Amendment and its "reasonableness standard." Graham v. Conner, 490 U.S. 386, 395 (1989). "The question [the Court] must ask is whether, under the totality of the circumstances, the officer's actions were objectively reasonable." Fox v. DeSoto, 489 F.3d 227, 236-37 (6th Cir. 2007).

In determining whether the force used was reasonable, relevant circumstances include, "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Howard v. Kansas City Police Dept., 570 F.3d 984, 989 (8th Cir. 2009) (citing Graham, 490 U.S. at 396). Other factors include "the duration of the [officer's] action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." Sharrar v. Felsing, 128 F.3d 810, 822 (3d Cir. 1997). The Court may also consider the extent of the suspect's injuries and standard police procedures. Mann v. Yarnell, 497 F.3d 822, 826 (8th Cir. 2007). "Ultimately, the reasonableness of the force applied must be judged from the perspective of a reasonable officer on the scene 'rather than with the 20/20 vision of hindsight.'" Id. See also Brown v. City of Golden Valley, 574 F.3d 491, 496 (8th Cir. 2009). Reasonableness under the Fourth Amendment is generally a question of fact for the jury. See Scott v. Henrich, 39 F.3d 912, 915 (9th Cir. 1994); Kopec v. Tate, 361 F.3d 772, 777 (3rd Cir. 2004); White v. Pierce County, 797 F.2d 812, 816 (9th Cir. 1986). Defendants can prevail on summary judgment only if the Court concludes, after resolving all factual disputes in favor of Plaintiff, that the officers' use of force was objectively reasonable under the circumstances. Scott, 39 F.3d at 915.

It is undisputed that as of February 5, 2009, there were two outstanding felony warrants for Plaintiff's arrest, one from Warren County for endangering the welfare of a child in the 1st degree, and one from Lincoln County for manufacturing methamphetamine. On February 5, 2009, Plaintiff was sleeping in the trailer home of a friend at 92 Highway T in Middletown, Missouri when officers with the Warren County Sheriff's Department, the East Central Drug

Task Force, and the St. Charles County Regional Drug Task Force police arrived at the home at approximately 10:00 or 11:00 p.m. to effect the arrest. Plaintiff awoke to the sound of a loud bang from the door on the porch of the trailer being opened and ran into the bathroom. He heard officers searching for him and telling him he was under arrest. The officers ordered him out of the bathroom and onto the floor. At this point, the narrative diverges.

According to Plaintiff, he offered no resistance. He stuck his arms out of the bathroom and was yanked into the hallway by Hunt and thrown to the ground. Hunt then placed him in a headlock and punched him in the head while Rowe bent and twisted his leg and kicked him. Plaintiff was told to put his arms behind his back; however, his right arm was caught in the headlock so he could not physically put his right arm behind his back; his left arm was bent up behind his back. According to Plaintiff, there were four police officers on him. Plaintiff stated he struggled with the officers for approximately three minutes. He suffered injuries to his face and body and was treated at the Audrain Medical Center emergency room.

According to Defendants, Plaintiff was pulled from the bathroom, but refused to comply with commands to get down on the floor so he could be handcuffed. Because Plaintiff was struggling to get up off the floor, flailing his arms and kicking his legs, Defendants grabbed Plaintiff's arms and held down his legs, and, using Pressure Point Control Tactics (PPCT), delivered a series of strikes to his arms and legs to overcome his resistance. After pulling Plaintiff out of the hallway and into a more open area of the trailer, the officers were able to handcuff him and sit him in a chair. At this point there was no more physical contact between Plaintiff and the officers. According to Defendants, Plaintiff's injuries consisted only of superficial cuts and bruises, including a cut to the face from a cat litter box he fell into while

5

struggling with Hunt.  At a pre-arrest briefing, Defendants had been apprised that Plaintiff was expected to be involved in a "meth cook," and that he may have been involved in an altercation where the other person had been shot.  Defendants did not know whether Plaintiff had a weapon in the trailer.

Hunt and Rowe have both been charged with the class A misdemeanor of Assault in the Third Degree, among other charges, relating to the circumstances surrounding Plaintiff's arrest on February 5, 2009, which charges are currently pending in Montgomery County.

In light of the varied testimony as to what occurred,[3] as well as the fact that all the witnesses are interested, the Court finds that genuine issues of material fact exist with respect to the circumstances surrounding Plaintiff's arrest and whether defendant officers used excessive force on Plaintiff, which issues can only be resolved by a jury making credibility determinations. See Scott, 39 F.3d at 915; Kopec, 361 F.3d at 777; White, 797 F.2d at 816.

**Qualified immunity in connection with excessive force**

Plaintiff, Hunt, and Rowe have all raised the issue of qualified immunity. The doctrine of qualified immunity protects police officers from having to defend lawsuits if their conduct did not violate clearly established statutory or constitutional law of which a reasonable person would have been aware. Harlow v. Fitzgerald, 457 U.S. 800, 817-18 (1982). To determine whether an official is entitled to qualified immunity, the Court conducts a two-part analysis. First, the Court must determine whether, "taking the facts in the light most favorable to the injured party, the

---

[3] In his Reply Memorandum in support of his motion for summary judgment, Plaintiff objects to Defendants' Exhibits A, E, J, M, N, P, S and T filed under seal with their Response and Memorandum in Opposition to Plaintiff's Motion for Summary Judgment on the grounds of admissibility.  Plaintiff also challenges Defendants' responses to his Statement of Uncontroverted Facts as misrepresenting what the record actually shows.  In light of the Court's ruling herein, the Court finds it unnecessary to address Plaintiff's objections.

facts alleged demonstrate that the official's conduct violated a constitutional right." White v. McKinley, 519 F.3d 806, 813 (8th Cir. 2008) (citing Clemmons v. Armontrout, 477 F.3d 962, 965 (8th Cir. 2007)). If a violation is found, the Court must then analyze whether the right was clearly established. Id. "To determine whether a right is clearly established we ask whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id.

Here, the right in question is the Fourth Amendment right to be free from excessive force, a right which is clearly established.  As a result, the qualified immunity inquiry is identical to the excessive force question.  Because the Court has found there are genuine issues of material fact as to whether excessive force was used, Hunt and Rowe are not entitled to summary judgment based on qualified immunity. White, 519 F.3d at 813 ("The party asserting immunity always has the burden to establish the relevant predicate facts, and at the summary judgment stage, the nonmoving party is given the benefit of all reasonable inferences.  If there is a genuine dispute concerning predicate facts material to the qualified immunity issue, the defendant is not entitled to summary judgment.").  See also Pace v. City of Des Moines, 201 F.3d 1050, 1056 (8th Cir. 2000); Lambert v. City of Dumas, 187 F.3d 931,935 (8th Cir. 1999).

**Adverse inference based on assertion of Fifth Amendment privilege**

Plaintiff deposed Hunt and Rowe on March 11, 2011, before scheduled status conferences in their pending misdemeanor cases.  On advice of counsel, Hunt and Rowe asserted their Fifth Amendment privilege at their depositions and declined to answer questions concerning the circumstances of Plaintiff's February 5, 2009 arrest.  Plaintiff asks the Court to draw an adverse inference as to liability based on Hunt and Rowe's assertion of the Fifth

Amendment to those questions.

"The Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them." See Baxter v. Palmigiano, 425 U.S. 308, 318 (1976). However, the record indicates Hunt and Rowe subsequently waived their privilege, and, through counsel, notified Plaintiff on April 6, 2011 that they were being provided for deposition at their cost. Plaintiff's counsel did not respond. Discovery in the case remained open through July 15, 2011. (ECF No. 29) The Court finds Plaintiff had a sufficient opportunity to obtain discovery from Defendants so that the probative value of their prior silence is "extremely low." See Harris v. City of Chicago, 266 F.3d 750, 753-54 (7th Cir. 2001) ("If—as defendants contend—[defendant] waived his privilege well before trial and agreed to testify to matters concerning [plaintiff's] arrest, then [plaintiff] had sufficient opportunity to obtain discovery from [defendant] on all issues related to the trial. Thus, the probative value of [defendant's] prior silence was extremely low and the district court was justified in excluding it....").

**Count VI - Assault and Battery**

A law enforcement officer making an arrest is "answerable in damages as for assault and battery only when....he uses more force than is reasonably necessary." Hendricks v. City of Bella Villa, 2010 WL 3024102 at *5 (E.D. Mo. August 2, 2010) (citing Neal v. Helbling, 726 S.W.2d 483, 497 (Mo.App. E.D. 1987). Because the Court has already determined that a genuine issue of material fact exists on Plaintiff's excessive force claims, there are likewise issues of fact as to whether Hunt and Rowe are liable for assault and battery under Missouri law, which preclude summary judgment. Woods v. Town of Danville, W.V., 712 F.Supp.2d 502, 511 (S.D.

W. Va. 2010) (citation omitted). Accordingly, Plaintiff's motion on Counts I and VI is denied.

### B.  Plaintiff's Motion to Strike and for Sanctions

Plaintiff's Motion is directed against Hunt, Rowe and the County for their failure to timely disclose their expert, Steve Ijames, and provide his Rule 26 report pursuant to the September 16, 2010 Case Management Order. Hunt, Rowe and the County concede they did not meet the May 27, 2011 deadline and did not seek an extension; rather, their expert designation and disclosure was made on September 1, 2011, the discovery deadline.  Plaintiff has not shown how he has been prejudiced as a result of the untimely disclosure. The Rule 26 report prepared by Mr. Ijames on behalf of Hunt and Rowe relies on the same facts and is virtually identical to the Rule 26 report he prepared on behalf of Wilson, which was provided to Plaintiff's counsel on July 15, 2011. In addition, Defendants have offered Mr. Ijames for deposition and continue to make him available.  Accordingly, Plaintiff's Motion to Strike and for Sanctions will be denied.

### C.  Plaintiff's Motion to Exclude Defendants' Expert

Hunt, Rowe and Wilson offer Steve Ijames, a former law enforcement officer with 29 years of experience, as an expert in police practices and training. Specifically, Mr. Ijames has been retained "to offer objective opinions....specifically focused on the physical interaction between [Plaintiff] and [the defendant officers]." (ECF No. 113-1)  He has authored numerous articles on a variety of law enforcement topics, including use of force and level of force continuum, and is a certified police trainer and instructor. Mr. Ijames is familiar with Pressure Point Control Tactics (PPCT), a system of control and distraction techniques designed to assist police officers with subject control. He is also familiar with Missouri Peace Officer Standards

(POST)-approved techniques that police officers are trained in to overcome resistance to arrest. Mr. Ijames has prepared a Rule 26 report on behalf of Wilson and a separate Rule 26 report on behalf of Hunt and Rowe. In his "Expert Report and Opinion," Mr. Ijames' opinion is stated as follows:

> "It is my opinion and belief that the force used by [Defendants Wilson, Hunt and Rowe] to effect the arrest and overcome the resistance put forth by [Plaintiff] was consistent with generally accepted police training and practice, proportional to the resistance put forth, not likely to result in serious or permanent injury, and within the standards of a reasonable, prudent, and properly trained police officer facing similar circumstances."

Plaintiff seeks to exclude Mr. Ijames from testifying at trial on the grounds that his opinions do not meet the relevance and reliability standards established in Federal Rule of Evidence 702, Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993) and Kumho Tire v. Carmichael, 526 U.S. 137 (1999). Plaintiff did not depose Mr. Ijames after being provided with his Rule 26 reports.

"Decisions concerning the admission of expert testimony lie within the broad discretion" of the Court. Anderson v. Raymond Corp., 340 F.3d 520, 523 (8th Cir. 2003). "The trial judge is first charged with determining whether the witness is qualified to offer expert testimony." Schmidt v. City of Bella Villa, 557 F.3d 564, 570 (8th Cir. 2009) (citing Daubert, 509 U.S. at 589). Pursuant to Rule 702 of the Federal Rules of Evidence, a witness properly qualified as an expert may testify in regard to their "scientific, technical, or other specialized knowledge" so long as it serves to "assist the trier of fact to understand the evidence or determine a fact in issue." Fed.R.Evid. 702. Having reviewed the record, the Court is satisfied that Mr. Ijames is qualified to testify regarding recognized police policies and procedures, the continuum of force used by officers generally, as well as the specific training they receive in PPCT.

Additionally, "district courts must act as gatekeepers to insure that proffered expert testimony is both relevant and reliable." Anderson, 340 F.3d at 523 (citing Daubert). While expert testimony on police practices and the use of force is generally admissible in §1983 excessive force cases, see Kladis v. Brezek, 823 F.2d 1014, 1019 (7th Cir. 1987); Calusinski v. Kruger, 24 F.3d 931, 937 (7th Cir. 1994); Kopf v. Skyrm, 993 F.2d 374, 379 (4th Cir.1993), the Court will not allow Mr. Ijames, either by his report or his testimony at trial, to offer any legal conclusions which either explicitly or implicitly touch on the ultimate legal issue in this case, that is, whether Defendants' conduct was reasonable under the totality of the circumstances they faced, particularly where, as here, the facts are in dispute. See Hygh v. Jacobs, 961 F.2d 359, 364 (2d. Cir. 1992) (precluding expert testimony in a § 1983 excessive force case that an officer's conduct was not "justified under the circumstances," not "warranted under the circumstances," and "totally improper"); Berry v. City of Detroit, 25 F.3d 1342, 1353-54 (6th Cir. 1994) (in a § 1983 claim, district court erroneously admitted expert testimony opining that certain conduct by defendant amounted to "deliberate indifference," which improperly expressed the ultimate legal conclusion at issue in the case); Peterson v. City of Plymouth, 60 F.3d 469, 475 (8th Cir. 1995). Accordingly, the Court will grant Plaintiff's motion as to that portion of Mr. Ijames' opinion stating that the force used by Hunt, Rowe and Wilson to effect Plaintiff's arrest was within the standards of a reasonable, prudent, and properly trained police officer.

**D**. **Defendants Hunt, Rowe and the County's Motion for Summary Judgment**

Having found that genuine issues of material fact exist with respect to the circumstances surrounding Plaintiff's arrest, and whether Hunt and Rowe used excessive force on Plaintiff, Defendants' Motion for Summary Judgment as to Count I will be denied. With respect to Count

VI, the Motion will be denied as to Hunt and Rowe.

In Count II of his Complaint, Plaintiff alleges three alternate theories of municipal liability under § 1983 against the County: (1) that the County delegated authority to Hunt and Rowe to make policy, making it liable for the constitutional violations committed by Hunt and Rowe; (2) that the County failed to properly hire, train, supervise, control and discipline Hunt and Rowe, resulting in deliberate indifference towards Plaintiff; and (3) that the County knew or should have known that the acts of Hunt and Rowe were part of a pattern of transgressions which the County failed to investigate and act on.

As a threshold matter, the Court states Plaintiff has failed to respond to the County's Motion with respect to Count II.  Plaintiff filed a "Statement of Undisputed Material Facts" (ECF No. 180) but failed to respond to Defendants' Statement of Uncontroverted Material Facts (ECF No. 159).  Under Local Rule 4.01(E), all matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party. Thus, for purposes of this motion, it is undisputed that Hunt and Rowe were on assignment to the St. Charles County Regional Drug Task Force and assisted Warren County, Montgomery County and the East Central Missouri Drug Task Force in a joint effort to arrest Plaintiff.  The County maintains a use of force policy governing its deputy sheriffs, as does the St. Charles County Regional Drug Task Force.  Both policies establish acceptable levels of force, including when conducting an arrest.  Hunt and Rowe received and continue to receive extensive training, including use of force training.  Hunt and Rowe were supervised on the Drug Task Force by a commander and assistant commander and by a board of directors which established policies and procedures and oversaw the unit.  Because this case presents no disputed

12

facts, there is no genuine issue as to any material fact, and all that remains to be determined is whether the defendants are entitled to judgment as a matter of law.[4]

"To establish municipal liability under § 1983, a plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." Monell v. N.Y. Dep't of Soc. Servs., 436 U.S. 658, 690-92 (1978).  A plaintiff asserting a custom or practice claim must establish: "(1) [t]he existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) [d]eliberate indifference to or a tacit authorization of such conduct by the governmental entity's policy making officials after notice of that misconduct; and (3) ...that the custom was the moving force behind the [injury]." Ware v. Jackson County, Mo., 150 F.3d 873, 880 (8th Cir. 1998) (internal citations omitted). See also Jane Doe "A" v. Special School Dist. of St. Louis County, 901 F.2d 642, 646 (8th Cir. 1990) (citing Harris v. City of Pagedale, 821 F.2d 499, 504-07 (8th Cir. 1987)).  Evidence "of a single incident of unconstitutional activity is not sufficient to impose liability." Mann, 497 F.3d at 828.  Rather, the practice must be "permanent and well-settled." Davison v. City of Minneapolis, Minn., 490 F.3d 748, 659 (8th Cir. 2007). Plaintiff cannot meet this burden.  He has presented no evidence in support of his claim of custom and no evidence of notice of misconduct, deliberate indifference, or tacit authorization on the part of the County. Noah v. Saint Louis County, Missouri, 2007 WL 2156301 at *3 (E.D. Mo. 2007).

With respect to the first theory of municipal liability, Plaintiff alleges the policy maker

---

[4] See Stough v. Mayville Community Schools, 138 F.3d 612, 614 (6th Cir.1998) ( "A district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded. The court is required, at a minimum, to examine the movant's motion....to ensure that he has discharged [his initial] burden.") (citation omitted).

for the County "is an aldermanic board, the mayor, or someone else and that person delegated full authority and/or empowered" Hunt and Rowe to make policy. Plaintiff has provided no evidence that County policy makers delegated policy making authority to Hunt and Rowe. The undisputed facts establish that the St. Charles County Council authorized its County Executive and County Sheriff to enter into an agreement with the Cities of St. Peters, Wentzville, O'Fallon and Lake St. Louis, Missouri, to establish the St. Charles County Regional Drug Task Force. (ECF No. 135) The Drug Task Force has a separate Board of Governors authorized to "approve policies," "set goals" and "oversee the Drug Task Force." Day-to-day operations are overseen by the Assistant Commander, under the supervision of the Commander. The Drug Task Force has established policies and guidelines governing its activities as well as on the use of force and its limitations, and has clearly described prohibited activities. (ECF No. 155) These policies and guidelines have the same effect on the Commander, Assistant Commander and all Investigating Officers assigned to the Task Force as the policies and procedures of their own political subdivisions. The Board of Governors has established training criteria for the Investigative Officers, and Task Force deputies are trained pursuant to that policy. In addition, the St. Charles County Sheriff's Department has adopted a Use of Force Policy and trained their officers pursuant to this policy. (ECF No. 154) Both Hunt and Rowe received training on these policies.

In sum, the admitted facts establish that the Drug Task Force Board of Governors is the authorized policy maker for the Task Force. Further, the Task Force Board of Governors adopted policies to prevent excessive force and trained its officers in appropriate force techniques. Plaintiff has not identified a policy of the County that is unconstitutional or that has any causal connection with his alleged constitutional violation. Because no genuine dispute as to

14

material fact exists as to this first theory of municipal liability against the County, summary judgment in favor of the County is proper.

With respect to the second theory of municipal liability, Plaintiff alleges in conclusory fashion that the County failed to "properly hire, train, supervise, control and/or discipline" Hunt and Rowe and "was thus deliberately indifferent to the rights of others in adopting its hiring and training practices." Plaintiff further alleges this failure to supervise, control and/or discipline Hunt and Rowe reflects "a deliberate or conscious choice" by the County.

To establish a claim for § 1983 municipal liability for improper hiring and training of police officers, Plaintiff must show: "(1) the County's hiring and training practices are inadequate; (2) the County was deliberately indifferent to the rights of others in adopting the practices, such that the "failure to train reflects a deliberate or conscious choice by a municipality;" and (3) an alleged deficiency in the County's hiring or training procedures actually caused the Plaintiff's injuries." Noah, 2007 WL 2156301 at *4 (citing Andrews v. Fowler, 98 F.3d 1069, 1076 (8th Cir. 1996) (citing City of Canton v. Harris, 489 U.S. 378, 389 (1989)).  Deliberate indifference is established by proving the County "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." Noah, 2007 WL 2156301 at *4 (citing Larson v. Miller, 76 F.3d 1446, 1454 (8th Cir. 1996)).

Plaintiff's allegations are wholly unsupported.  He does not claim he can identify any pattern of injuries linked to the County's hiring practices generally, see Brown, 520 U.S. at 408, and points to nothing in Hunt and Rowe's backgrounds that would lead a reasonable policymaker to conclude that they were "highly likely to inflict the *particular* injury suffered by the plaintiff." Board of County Com'rs of Bryan County, Okl. v. Brown,  520 U.S. 397, 411-12 (1997). He does

not reference elements of the County's training procedures or policies which he claims are "inadequate and likely to result in a violation of constitutional rights." Noah, 2007 WL 2156301 at *5 (citing Larson, 76 F.3d at 1454). See also Buffington v. Baltimore County, 913 F.2d 113, 122 (4th Cir.1990) (A plaintiff must show a "direct causal link" between "a specific deficiency in training and the particular violation alleged."). Furthermore, the record demonstrates that Hunt and Rowe received use of force training.

To establish supervisory liability under §1983, Plaintiff must show: "(1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir.1994) (citations omitted). The conduct complained of must be "pervasive," meaning the "conduct is widespread, or at least has been used on several different occasions." Id. To show deliberate indifference, a plaintiff must demonstrate a supervisor's " 'continued inaction in the face of documented widespread abuses.' " Id. (citation omitted). The admitted and undisputed facts establish that the County trained, supervised and controlled its deputies under the control of the Drug Task Force Board of Governors, directly supervised by a Commander and Assistant Commander and operating pursuant to adopted policies. Plaintiff has presented no evidence that the County had notice of a pattern of unconstitutional acts, or that by failing to take action, demonstrated deliberate indifference, thereby causing Plaintiff's injury. In sum, Plaintiff has failed to present sufficient evidence to support a claim under § 1983

for municipal liability based on a failure to properly hire, train, supervise, control and discipline Hunt and Rowe.

As a third basis for municipal liability, Plaintiff asserts the County knew or should have known that the acts of Hunt and Rowe were part of a pattern of transgression. As with Plaintiff's first claim for municipal liability, the County is only liable if it had a policy or custom of failing to act upon prior similar complaints of unconstitutional conduct. Again, Plaintiff must show a widespread and persistent pattern of unconstitutional conduct, that County officials had knowledge of prior incidents of misconduct, and deliberately failed to take action. Plaintiff has failed to provide any evidence from the record to support this claim, particularly evidence of any previous complaints received by the County concerning excessive force by its officers.

In Count VI of his Complaint, Plaintiff alleges a claim for assault and battery against the County based on the doctrine of *respondeat superior*. It is well established that municipalities are not subject to *respondeat superior* or vicarious liability under § 1983. Steibel v. Locke, 2009 WL 1456705 at *20 (E.D. Mo., May 22, 2009) (citing Monell, 436 U.S. at 694).

Accordingly, because Plaintiff has failed to submit any evidence that the County knowingly maintained a widespread custom or practice of allowing or promoting the use of excessive force which it promulgated with deliberate indifference, and because municipalities are not subject to *respondeat superior* under § 1983, the Court finds summary judgment in favor of the County is proper.

### E. Lake Saint Louis' Motion for Summary Judgment

In Count III of his Complaint, Plaintiff alleges identical claims for municipal liability under

17

§ 1983 against the City with respect to its officer, Dion Wilson. Because Plaintiff has not opposed the City's Motion, there are no disputed facts, and thus no genuine issue as to any material fact. All that remains for the Court's determination is whether Lake Saint Louis is entitled to judgment as a matter of law.

As discussed supra, "[t]o establish municipal liability under § 1983, a plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." Monell, 436 U.S. at 690-92.  Plaintiff must establish: "a continuing, widespread, persistent pattern of unconstitutional misconduct," "deliberate indifference to or a tacit authorization of such conduct ....after notice of that misconduct," and that the custom was the "moving force" behind Plaintiff's injury." Ware, 150 F.3d at 880.

With respect to the first theory of municipal liability, delegation of policy-making authority, for purposes of this Motion it is undisputed that the Lake Saint Louis Board of Aldermen is the final policy-making authority for the City. Thus, there is no support for Plaintiff's allegation that the City vested policy-making authority with officer Wilson.

With respect to the second theory of municipal liability, failure to properly hire, train, supervise, control and discipline, Plaintiff's allegations are conclusory and unsubstantiated. First, Plaintiff has not alleged prior complaints in Wilson's background that were nearly identical to the use of force Plaintiff claims Wilson used during the course of his arrest.  Morris v. Crawford County, 299 F.3d 919, 923 (8th Cir. 2002).  Second, in light of the undisputed facts that Wilson received extensive and continuous training on use of force, the record fails to establish deliberate indifference to the need to train Wilson regarding use of force. Third, Plaintiff presents no evidence that Wilson, or any other City police officer, engaged in a pattern of excessive use of

18

force, demonstrated deliberate indifference by failing to take sufficient remedial action, and that such failure proximately caused his injuries. Jane Doe A., 901 F.2d at 645-46. Finally, Plaintiff has presented no evidence that the City failed to investigate previous incidents that were similar to the alleged circumstances of his arrest that would support a finding of a custom or policy encouraging or permitting the City's officers to use excessive force. Mettler v. Whitledge, 165 F.2d 1197, 1205 (8th Cir. 1999).

With respect to the third theory of municipal liability, pattern of transgression, the record does not support Plaintiff's claim. Plaintiff does not present evidence of a "continuing, widespread, persistent pattern of unconstitutional misconduct" on the part of officer Wilson. Thelma D., 934 F.2d at 933. There are no allegations of prior incidents of use of excessive force by the City's police officers or that the City had notice of such conduct.  Without notice of such conduct, the City cannot be said to have shown deliberate indifference to such conduct. Id.

Because Plaintiff has failed to submit any evidence that the City knowingly maintained a widespread custom or practice of allowing or promoting the use of excessive force which it promulgated with deliberate indifference, the Court finds summary judgment in favor of the City on the issue of municipal liability is proper.

In Count VI of his Complaint, Plaintiff alleges a claim for assault and battery against the City based on the doctrine of *respondeat superior*.  It is well established that municipalities are not subject to *respondeat superior* or vicarious liability under § 1983. Steibel, 2009 WL 1456705 at *20 (citing Monell, 436 U.S. at 694). Thus, summary judgment is proper.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment on Counts I

and Count VI of Plaintiff's Complaint (ECF No. 59) is DENIED.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Strike and for Sanctions (ECF No. 111) is DENIED.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Exclude (ECF No. 112) is GRANTED as to that portion of Mr. Ijames's opinion concerning the reasonableness of defendant officers' conduct within the standards of a reasonable, prudent, and properly trained police officer.

**IT IS FURTHER ORDERED** that Lake Saint Louis' Motion for Summary Judgment (ECF No. 114) is GRANTED.

**IT IS FURTHER ORDERED** that Defendants Drug Task Force Officer Deputy Chris Hunt, Drug Task Force Officer Deputy William Rowe and St. Charles County's Motion for Summary Judgment (ECF No. 119) is GRANTED in part and DENIED in part as follows:

Defendants Hunt and Rowe's Motion as to Counts I and VI is DENIED;

Defendant St. Charles County's Motion as to Counts II and VI is GRANTED.

An appropriate Judgment will accompany this Memorandum and Order.

Dated this 9th day of December, 2011.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE